IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN W. TORGERSON,

                Petitioner,

v.

JON E. LITSCHER,

                Respondent.

OPINION and ORDER

18-cv-497-jdp

---

John W. Torgerson, appearing pro se, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. He challenges a judgment of conviction entered on March 25, 2015, by the Circuit Court for Eau Claire County, Wisconsin, for multiple violations of statutes making it a crime to offer or sell unregistered securities and to omit material facts when offering or selling securities. The petition is before the court for preliminary review under Rule 4 of the Rules Governing Section 2254 Cases. Under Rule 4, I must dismiss the petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." In conducting this review, I have considered the petition and its attachments, Torgerson's supporting brief, and the decision of the Wisconsin Court of Appeals on his direct appeal. *State v. Torgerson*, 2017 WI App 56, 377 Wis. 2d 728, 902 N.W.2d 808; Dkt. 1-1.

For the reasons that follow, I conclude that Torgerson's claims are either barred by the doctrine of procedural default or cannot be raised in a federal habeas petition. Before dismissing the petition, however, I will give Torgerson an opportunity to respond to this order to show cause why his petition should not be dismissed.

BACKGROUND

In May 2013, John Torgerson was charged with 57 violations of Wisconsin's securities laws. Specifically, he was charged with 29 violations of Wis. Stat. § 551.21(1)(a) (2005–06) and § 551.301(3) (2007–08), both of which prohibited the sale of unregistered securities. He was also charged with 28 violations of Wis. Stat. § 551.42(2) (2005–06) and § 551.501(2) (2007–08), both of which made it unlawful to omit certain material facts when offering or selling securities.

Torgerson proceeded to a jury trial in October 2014. The trial evidence showed that Torgerson had incorporated Preferred Acceptance Company (PAC) to engage in subprime lending in the Chippewa Valley. In 2003, Torgerson began offering individual investments through PAC in the form of interest-bearing promissory notes. Torgerson did not "register" PAC's promissory notes. Instead, on PAC's behalf, Torgerson applied for and was granted an administrative exemption from the securities registration requirement by the Wisconsin Division of Securities within the Department of Financial Institutions in 2003, 2004, and 2005.

Torgerson filed another application with the Division of Securities in 2006, requesting an additional one-year exemption for PAC. The chief legal counsel for the Division sent a letter to Torgerson in November 2006, stating that the Division needed additional information before it would grant an extension of PAC's exemption due to concerns about PAC's financial condition. Torgerson submitted additional information in September 2007, but the Division deemed the information insufficient. In October 2007, the Division requested information regarding the specific issues identified in its November 2006 letter, but Torgerson did not respond.

Although PAC's exemption from the Division expired in November 2006, Torgerson continued to offer and issue unregistered securities between 2006 and 2010. Many of the securities were renewals of previously issued promissory notes for which Torgerson could not pay the principal owed. Torgerson issued notes primarily through PAC, but also through other entities that he owned or controlled. Torgerson testified at trial that for each of the transactions, he had discussed with investors the existence of a $960,000 bank judgment against PAC that resulted in his inability to repay promissory notes that had come due.

At trial, the state argued that Torgerson violated Wisconsin securities law by failing to tell his investors material facts that would have affected their investment decisions. In particular, the state presented evidence that Torgerson failed to tell his investors about the registration problems he was having with the Division, the negative results of an accounting audit of PAC in 2008, and that an investor had filed a successful lawsuit against Torgerson and PAC in 2009 based on a promissory note that had not been repaid when it came due.

The jury acquitted Torgerson of ten charges but found him guilty on all other counts, consisting of 24 counts of selling securities without a registration or exemption and 23 counts of making omissions of material fact in the sale of securities. Torgerson was sentenced to a total of four years of imprisonment and two years of extended supervision. He also was ordered to pay $444,000 in restitution to the victims.

The state public defender appointed counsel from Quarles & Brady LLP to handle Torgerson's appeal. Counsel filed a motion for postconviction relief in the circuit court, arguing that (1) Torgerson's convictions for selling unregistered securities should be vacated because the evidence proved that the transactions at issue were automatically exempt from registration under Wisconsin's "limited offering exemption"; (2) Torgerson's convictions for making

omissions of material fact should be vacated because the evidence at trial proved that Torgerson was not required under Wisconsin law to disclose the information he omitted; (3) all of the convictions should be vacated because the state failed to prove that the renewals of promissory notes were "sales" under Wisconsin law; and (4) the restitution order should be vacated because the state failed to establish a causal nexus between the crime and the victims' damages. The circuit court denied the motion and Torgerson's counsel filed an appeal. On appeal, Torgerson's counsel raised the same four arguments that had been raised in the postconviction motion.

The Wisconsin Court of Appeals rejected Torgerson's arguments, affirmed his conviction on all counts, and affirmed the restitution order. Dkt. 1-1. The court of appeals reasoned that Torgerson had forfeited his first argument regarding the automatic limited offering exemption, at least as it applied to PAC, because he had not raised that defense at trial. Dkt. 1-1 at 8. The court also rejected the argument on the merits, holding that Torgerson had the burden to prove the applicability of the exemption and he had failed to do so. *Id.* at 8–9. The court explained that Torgerson had not identified evidence in the record showing he was entitled to the exemption and even if he had, the state had proven that an exception to the limited offering exemption applied. *Id.* at 11–12.

As for Torgerson's arguments about the charges based on omissions of material facts, the court concluded that the evidence was sufficient to support the jury's finding that the information should have been disclosed under Wisconsin law. *Id.* at 12–13. The court rejected Torgerson's third argument that the renewals of previously issued promissory notes were not "sales" covered by the securities statutes, holding that the evidence supported the jury's finding that the renewals were sales under Wisconsin law. *Id.* at 14–16. Finally, the court concluded

that the circuit court did not abuse its discretion in calculating the restitution amount. *Id.* at 16-17.

Torgerson's counsel filed a petition for review with the Wisconsin Supreme Court, challenging the court of appeals' decision on three of the four arguments raised below. According to Torgerson, counsel omitted the argument that the "renewals" did not constitute "sales" for the sake of brevity. The Supreme Court denied the petition for review on November 13, 2017. Torgerson filed a petition for habeas corpus in this court on June 27, 2018.

ANALYSIS

Torgerson raises the following grounds for relief in his petition:

> (1) the state courts' interpretation of Wisconsin law as requiring disclosure of the type of information Torgerson withheld was an unforeseeable expansion of the criminal statutes that violated his due process rights;
>
> (2) the state courts' conclusion that it was Torgerson's burden under Wisconsin law to prove that he qualified for the automatic limited offering exemption was an unforeseeable interpretation of the criminal statutes that violated his due process rights;
>
> (3) the state courts' affirmance of the restitution order despite the lack of evidence showing that Torgerson was responsible for his investors' losses and without considering Torgerson's ability to pay or the needs of his family violated his due process rights and right against cruel and unusual punishment;
>
> (4) the state courts' conclusion that renewals of promissory notes could be sales under Wisconsin securities law was an unforeseeable expansion of the criminal statutes that violated his due process rights; and
>
> (5) trial counsel was ineffective because he failed to (a) argue that PAC was covered by the limited offering exemption, resulting in forfeiture by court of appeals; (b) object to a "last minute" exhibit shown to jury that included an incorrect amount that Torgerson owed to PAC; (c) hire an expert witness to testify as to the legality

5

> of PAC's loans to Torgerson and Torgerson's record of regular payments prior to his Chapter 7 bankruptcy filing in March 2010; (d) argue that the vagueness doctrine precluded a finding that renewals could be sales; (e) quote to the jury the definitions of "sale" and "renewal" from legal dictionaries; (f) argue that the restitution order imposed an impossible burden on Torgerson in light of his future income potential and the needs of his family.

As an initial matter, claim 3 relating to the restitution order cannot be raised in a federal habeas petition. A state prisoner may obtain habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). [P]risoners who are not seeking earlier or immediate release are not seeking habeas corpus relief." *Washington v. Smith*, 564 F.3d 1350, 1350 (7th Cir. 2009). Because a reduction of Torgerson's restitution amount would not result in his being released immediately or earlier, a claim challenging the restitution order cannot be brought under § 2254. *See id.* ("[Petitioner's] attack on counsel's handling of the restitution amount simply does not state a cognizable claim for relief under § 2254.")

This leaves claims 1, 2, 4, and 5. Torgerson admits that he procedurally defaulted claim 5 relating to ineffective assistance of his trial counsel, but he argues, without elaboration, that his default should be excused to avoid a fundamental miscarriage of justice. From my own review of the petition, it appears that Torgerson also procedurally defaulted claims 1, 2, and 4 by failing to raise them in state court. Accordingly, I will give Torgerson an opportunity to file a supplement to his petition showing why claims 1, 2, 4, and 5 should not be dismissed under the doctrine of procedural default.

**A. Procedural default of claims 1, 2, and 4**

A state prisoner must fully exhaust his claims by presenting them at all levels of review in the state courts before raising them in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); 28 U.S.C. § 2254(b)(1)(A). When the petitioner has already pursued state court remedies but failed to properly present a claim to the state courts along the way, that claim is barred by the doctrine of procedural default. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

Torgerson contends that he raised all of his claims in the state courts, with the exception of his ineffective assistance of counsel claims, but the record does not support his assertion. Torgerson's own description of the claims he made in the state courts, Dkt. 1, the court of appeals' decision on his direct appeal, Dkt. 1-1, and Torgerson's appellate briefs that are publicly available on the Wisconsin Court of Appeals' website, https://wscca.wicourts.gov, all confirm that the claims Torgerson made in the state courts are different than the claims he now raises. In particular, Torgerson's arguments in state court concerned the correct interpretation of Wisconsin securities law and whether there was sufficient evidence to convict him under the interpretation he was advocating. Torgerson argued that under Wisconsin law, his transactions were exempt from registration, he was not required to disclose additional facts, and the renewals did not constitute sales. All of his claims were based on errors of state law.[1]

---

[1] Torgerson's argument in state court that there was insufficient evidence to support his conviction does implicate the Due Process Clause of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). However, Torgerson's sufficiency of the evidence argument was dependent on his arguments regarding interpretation of state law. In any event, aside from the restitution order, which I am dismissing, I do not understand Torgerson to be making a sufficiency of the evidence argument in his habeas petition that is independent of his arguments that the state courts violated his due process rights by interpreting state law too expansively.

7

A federal habeas court cannot correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Arnold v. Dittmann*, 901 F.3d 830, 835 (7th Cir. 2018) ("[E]rrors of state law are not cognizable on habeas review."). However, if the petitioner contends that state court's error of state law resulted in a violation of the petitioner's constitutional rights, the claim can be raised habeas review. *Perruquet*, 390 F.3d at 512. Perhaps for this reason, Torgerson's habeas petition now frames his challenges to the state court's interpretation of Wisconsin securities law in terms of his constitutional right to due process, arguing that the state courts' expansive and unforeseeable interpretation of state law violated his right to fair notice. *See Stern v. Meisner*, 812 F.3d 606, 609 (7th Cir. 2016) (evaluating whether state court's interpretation of state law resulted in due process violation because it was unreasonable or unforeseeable).

But it is not enough for Torgerson to invoke his constitutional rights in his habeas petition in this court. To properly raise any issue on habeas review, he must have "fairly presented" that issue through one complete round of state court review. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). This means that Torgerson must have "sufficiently alerted" the state court "to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Whatley v. Zatecky*, 833 F.3d 762, 771 (7th Cir. 2016). The Court of Appeals for the Seventh Circuit has "set forth four factors to consider in determining whether a petitioner has avoided default in such circumstances: (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; (3) whether the petitioner framed the

8

claim in terms so particular as to call to mind a specific constitutional right; or (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 771. "All four factors need not be present to avoid default, and conversely, a single factor alone does not automatically avoid default." *Id.* Rather, the Court "must consider the specific circumstances of each case." *Id.*

Nothing in Torgerson's petition, his state court appellate briefs, or the court of appeals' decision suggests that he raised in state court the due process claims that he now raises here. Torgerson did not argue that the state court's interpretation of Wisconsin securities law was so expansive or unforeseeable that it violated his right to due process, that the state laws were void for vagueness, or that his convictions implicated any other federal constitutional protection. Rather, as Torgerson states in his petition, his claims in the state courts concerned the correct interpretation of Wisconsin securities law. Likewise, the court of appeals' decision on his direct appeal focuses on Wisconsin securities and restitution law and does not discuss federal constitutional standards. Dkt. 1-1. Torgerson's state-law claims were insufficient to preserve the due process claims he now raises. Accordingly, Torgerson appears to have procedurally defaulted on claims 1, 2, and 4 in his petition.

B. Exceptions to procedural default

When a petitioner has procedurally defaulted on a claim by failing to present it in state court, a federal court may not consider the claim in a habeas petition unless the petitioner can show cause and prejudice for his failure to exhaust his claims, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), or show that dismissal would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To meet the "cause" exception, a petitioner must show that there was "some objective factor external to the defense" that prevented him from

9

pursuing his claim in state court. *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003). To show that dismissed of the claim would result in a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, not presented at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 315; *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016).

Because Torgerson concedes he procedurally defaulted his ineffective assistance of trial counsel claim (claim 5), he appears to have procedurally defaulted on claims 1, 2, and 4, and his restitution claim (claim 3) cannot be raised in a habeas petition, I will not consider the potential merits of Torgerson's claims or order the state to respond to his petition at this time. Instead, I will direct Torgerson to file a response to this order showing cause why I should not dismiss his habeas petition on grounds of procedural default for failure to exhaust his claims in state court. Torgerson may accomplish this by showing that (1) some objective factor external to the defense prevented him from raising his claims in state court; or (2) no reasonable juror would have convicted him in light of new evidence that was not presented at trial. If Torgerson fails to show that he is entitled to the exceptions to the procedural default rules, I will dismiss his petition.

ORDER

IT IS ORDERED that petitioner John Torgerson may have until December 21, 2018, to respond to this order and show cause why his petition should not be dismissed.

Entered November 29, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge